IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                            CRIMINAL ACTION NO. 2:13-cr-00088

RETSYN DESHAWN OWENS,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court are Defendant Retsyn Deshawn Owens' Motion for Compassionate Release, [ECF No. 56] and Emergency Motion for Immediate Ruling on the Motion for Compassionate Release [ECF No. 58]. The court, in deciding such motions, will consider the following: whether the defendant has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and the 18 U.S.C. § 3553(a) factors. In deciding what constitutes "extraordinary and compelling reasons" for release by reason of COVID-19, this court has held a defendant must demonstrate that he has a medical condition listed by the Centers for Disease Control and Prevention as causing an increased risk of severe illness from COVID-19 and that he is at a facility which cannot effectively prevent the spread of the virus. For the reasons that follow, the Motion is **DENIED without prejudice**.

## I.   Background

On January 2, 2014, Mr. Owens was sentenced to 151 months of imprisonment to be followed by three years of supervised release following his conviction on one count of conspiracy to distribute a controlled substance [ECF No. 39]. Mr. Owens is currently incarcerated in the camp site at Federal Correctional Institution Loretto ("FCI Loretto") with a projected release date of July 20, 2025. *Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc (last visited Dec. 14, 2020).

Mr. Owens now petitions the court, arguing that the COVID-19 pandemic and prison conditions constitute "extraordinary and compelling reasons" for his release. Mr. Owens notes that he takes medication for high blood pressure. [ECF. No. 56 at 17].

## II.   Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's ["BOP"] authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations removed); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.").

For me to reduce Mr. Owens's sentence under compassionate release, I must find that he has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and

find that his release is consistent with the § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018). Mr. Owens has not satisfied all of those requirements, and I do not reduce his sentence today.

### (a) Exhaustion

> Section 3582(c)(1)(A) provides that:
>> . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*, may reduce the term of imprisonment . . . .

18 U.S.C. 3582(c)(1)(A) (emphasis added). Prior to the enactment of the First Step Act, only the Director of BOP could file a motion for compassionate release. The First Step Act amended this provision to permit an inmate to file a motion in federal court seeking compassionate release, provided certain circumstances were satisfied. Put plainly, the court may modify a term of imprisonment upon the earliest of one of three events:

1. When the Director of BOP has made a motion;
2. When the defendant has exhausted his or her administrative remedies with BOP and petitioned the court;
3. When 30 days have lapsed from the date of the request to BOP and defendant has petitioned the court.

*Id.*

The language of the statute is clear. There are two ways for a defendant to petition the court for compassionate release. Those two options are alternatives. With

the first option, the defendant must fully complete BOP's administrative appeals process. With the second option, "the statute's plain text states only that thirty days must past after the defendant requests compassionate release from the warden. No more, no less." *United States v. Carter*, ---F. Supp.3d----, ---, No. 2:19-CR-00078, 2020 WL 3458598, at *2 (S.D.W. Va. June 25, 2020).

In this case, Owens petitioned FCI Loretto's warden and received a denial on June 1, 2020. [ECF No. 56, ex. 2]. I therefore find that Owens has satisfied the exhaustion requirement and that the Motion is ripe for review.

### (b) Extraordinary and compelling reasons for release

Once an inmate has satisfied administrative exhaustion, a court may reduce his sentence upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[1] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). But many courts, including this court, have found "'extraordinary and compelling' reasons 'supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe

---

[1] The specific extraordinary and compelling reasons listed in the Sentencing Guidelines for BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by BOP." *United States of America v. Thaher,* No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

illness from COVID-19."'[2] *United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *3 (S.D. W. Va. June 12, 2020) (citing *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *7 (N.D.N.Y. May 27, 2020). I recently held in *United States v. John Delaney Wilson*, ---F. Supp.3d----, ---, No. 2:18-cr-00295, 2020 WL 4287592 at *2 (S.D.W. Va. July 27, 2020), that I should not find "extraordinary and compelling" reasons exist to grant release because of COVID-19 unless the inmate has a condition that makes him more at risk for developing a serious illness from COVID-19 and the facility where the inmate is housed has conditions such that its inmates are at a high risk of contracting COVID-19. In deciding which conditions result in an inmate being a higher risk for COVID-19, I will defer to CDC's list of medical conditions causing an increased risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 14, 2020). Using CDC guidance will allow for more predictable standards in deciding which defendants have "extraordinary and compelling" reasons justifying release.

I will note that Attorney General William Barr has twice issued memoranda directing BOP to prioritize the use of home confinement for vulnerable inmates. *See Memorandum for Director of BOP*,

---

[2] "Section 1B1.13 of the United States Sentencing Guidelines contains the only policy statement issued by the Sentencing Commission pertaining to compassionate release," which has not been updated since the passage of the First Step Act. *See Bass*, 2020 WL 2831851, at *3; U.S.S.G. § 1B1.13.2 ). The United States Court of Appeals for the Fourth Circuit has clarified that district courts are not bound by the enumerated extraordinary and compelling reasons listed in Guidelines § 1B1.13 because the Guidelines have not been updated since the passage of the First Step Act. *United States v. McCoy*, --- F.3d ---, 2020 WL 7050097, at * (4th Cir. Dec. 2, 2020)

https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf (last visited Sept. 13, 2020) and https://www.justice.gov/file/1262731/download (last visited Sept. 13, 2020). Yet, by all accounts, BOP has resisted calls to release vulnerable inmates to home confinement. Indeed, other district courts have noted their awareness "of the growing evidence of the BOP's chronic mismanagement of its vulnerable population during the COVID-19 pandemic." *Woodard v. United States*, No. 2:12-CR-105, 2020 WL 3528413, at *3 (E.D. Va. June 26, 2020); *see also Wilson v. Williams*, 4:20-cv-00794, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020) (documenting the "unacceptable" percentage of positive tests at FCI Elkton and BOP's "ineffective[ness] . . . at stopping the spread"). "Even in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (the likelihood of contracting the virus is greater in prison than if a defendant were able to fully self-isolated at home); *see also United States v. Stephens*, 447 F. Supp. 3d 63, 65, (S.D.N.Y. Mar. 19, 2020) (discussing the heightened risk presented by a COVID-19 outbreak in a jail or prison versus the community at large). Thus, when looking at whether an inmate is at a prison with a high risk of contracting COVID-19, it is also imperative to recognize the context and failures of BOP to stop the spread of COVID-19 in prisons.

In this case, the conditions at Mr. Owens's place of confinement are alarming. FCI Loretto now has a staggering 609 inmates and 29 staff who have tested positive for COVID-19. *COVID-19 Update*, Fed. Bur. of Prison,

6

https://www.bop.gov/coronavirus/ (last visited Dec. 14, 2020). However, other factors weigh against reducing Mr. Owens' sentence. First, Mr. Owens has not presented evidence that he has a condition that makes him at risk for developing serious illness from COVID-19. The CDC considers high blood pressure a factor that *might* increase the risk of complications from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 14, 2020). But the CDC does not include high blood pressure among the comorbidities for which an adult of any age is at an increased risk of developing a severe illness from COVID-19. *Id.*

Second, in examining Mr. Owens's particular circumstances, I note that that Mr. Owens is housed in the satellite camp at FCI Loretto. [ECF No. 56 at 12]. In his December 11, 2020 filing [ECF No. 58], Mr. Owens expresses concerns that COVID-19 will be transmitted to the camp but does not allege that there is an outbreak in his housing unit at this time. Mr. Owens's concerns are well-founded, but a generalized fear of contracting COVID-19 does not, without more, rise to the level of extraordinary and compelling circumstances.

Because Mr. Owens has not been diagnosed with a qualifying underlying condition and because he is housed in the low population housing camp which does not—at the moment—have a major outbreak of COVID-19, I do not find there are extraordinary and compelling reasons justifying his release. Therefore, I need not determine whether Mr. Owens is a danger to the community, or whether the 18 U.S.C. § 3553(a) factors support a reduced sentence in this case.

I. **Conclusion**

The court **DENIES without prejudice** Mr. Owens's Motion for Compassionate Release, [ECF No. 56]. The Motion for Immediate Consideration [ECF No. 58] is **DENIED AS MOOT**. The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

        ENTER:    December 15, 2020

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE